Mr. Justice Hagner
delivered the opinion of the court.
The bill in this case, filed by Talbot C. Murray, alleges the recovery by him of a judgment on the law side of this ■court against the defendant Wilson Ager and others for ■$2,164.66; that an execution was issued upon the judgment, which was returned nulla bono, by the marshal; that the ■defendant, Wilson Ager, is the inventor and owner of certain inventions secured to him by letters-patent .from the United States, which are described in the bill, “ for improvement in machines and processes for decorticating grain; ” that the *88 complainant is without any means of realizing his judgment*, except by the subjection of the patent right to its payment-,, and it prays that the rights of the patentee may be sold under the decree of the court and the proceeds applied to the payment of the judgment; that an injunction may be granted to restrain the defendant Wilson Ager from selling or assigning the patents during the pendency of the suit; and that after sale has been made he may be compelled to execute such assignment of the patents to the purchaser as may be necessary to vest the title in conformity wdth the patent laws of the United States, or in the event of his failure to-do so, that a trustee may be appointed to execute the assignments.
The defendant’s answer admits the rendition of the-judgment, the return of the execution unsatisfied, and that he is the owner of the patent rights described in the billj but he claims that these are not subject to seizure and sale under the proceedings instituted by the complainant.
The court below passed a decree dismissing the bill, andj the complainant appealed to this court.
. The question involved in the case is one of great interest, and of novelty, so far as we have been able to discover. -
It is insisted upon the part of the patentee that the rights-secured to him by his patent cannot be made the subject of sale by any process at law, or in equity, against his consent..
The Constitution, by Article I, section 8, declares that Congress shall have power to promote the progress of science and the useful arts by securing for limited times to authors, and inventors the exclusive right to their respective writings and discoveries. In conformity with this provision a careful system of laws has been devised regulating the issue of patents and • directing the mode in which they may be assigned. Section 4898 of the Revised Statutes declares-that every such patent, or interest therein, shall be assignable in law by an instrument in writing, and that such assignment or conveyance shall be void as against any subsequent, purchaser or mortgagee, for valuable consideration without, notice, unless recorded in the Patent Office within three *89 months from its date. Section 4896 prescribes the mode in which a patent may be issued to an executor or administrator of an inventor, in trust for his heirs-at-law, or devisees, in case of the death of the patentee before the issue of the patent, and declares that the patent shall be enjoyed by his representatives, or devisees, in as full manner and on the same terms and conditions as it might have been enjoyed by the original patentee. Similar provisions exist in the statutes with reference to copyrights, which are declared to be assignable by an instrument in a prescribed form to be recorded in the office of the Librarian of Congress.
It is contended upon the part of the patentee that it is well settled upon authority that the patent right in the hand of the inventor cannot be made the subject of sale under an execution at law, and the case in 14 Howard, 528, Stevens vs. Cady, is relied upon as establishing this proposition. It is to be observed that the case refers to a copyright and not to a patent right, and although it is intimated in the case of Stevens vs. Gladding, in 17 Howard, 454, that there is no common law copyright in this country, it is well settled that there existed at the common law a marked distinction between the rights of an author to his writings and those of an inventor in his invention. The authorities declared that, independent of statute, or of grant from the government, an author had a right to the exclusive publication of his writings, while no such exclusive right existed, independent of statute, in an inventor; and that no action could be maintained by an inventor before the grant of a patent, for the unauthorized use of the invention. Gaylor vs. Wilder, 10 Howard. 477, “An inventor, in fact,” says an approved authority, “does not create, but only -invents or finds out something which had a prior-existence, although unknown to the world, in precisely the same way that persons make discoveries in geography and astronomy. If Milton had not written Paradise Lost, it is extremely improbable that it would ever have been written at all. Put if Watt had never published his invention, it would most probably have been discovered long ere now, *90 that a condensing steam engine is worked with more economy when the steam is condensed in a separate vessel, and not in the cylinder.” Iiindmarsh on Patents, 228.
But conceding that patent rights and copyrights stand on the same footing, let us examine how the decision in 14 Howard controls the present inquiry. The facts of that case are, that the complainant took out a copyright of a map of the State of Rhode Island ; that while engaged in publishing the map, by virtue of the copyright, a judgment was recovered against him by a creditor, execution issued, and the copper plate upon which the map was engraved was seized and sold by the sheriff to the defendant, who thereupon proceeded to strike from the plate copies of the map j and the prayer of the bill was that an injunction might be.granted to restrain its printing and publishing in violation of the complainant’s copyright.
“The single question in the case,” say the court, “is whether or not the property acquired by the defendant in' the copper plate, at the sheriff’s sale, carried with it, as an incident, the right to print and publish the map engraved upon its face.” The Supreme Court decide that all that was sold by the sheriff was the piece of copper upon which the map was engraved ; that the sheriff" did not attempt to sell, and had no right to sell, under the execution, the copyright. “ The copyright is the exclusive right to the multiplication of the copies for the benefit of the author or his assignees, disconnected from the plate or any other physical existence. It is an incorporeal right to print and publish the map, or, as said by Lord Mansfield in Miller vs. Taylor, 4 Burr., 2396, “a property in notion, and has no corporeal, tangible substance.” The court proceeds : “ The copperplate engraving, like any other tangible personal property, is the subject of seizure and sale on execution, and the title passes to the purchaser the same as if made at a private sale ; but the incorporeal right, secured by the statute to the author, to multiply copies of the map by the use of the plate, being intangible, and resting altogether in grant, is not the subject of seizure or sale by means of this process ; certainly, not at common law.”
*91 So far as this applies to copyrights it seems explicit enough. But the court proceeds :
“ No doubt the property may be reached by a creditor’s bill, and be applied to the payment of the debts of the author the same as stock of the debtor is reached and applied, the ■court compelling a transfer and sale of the stock for the benefit of the creditors. But in case of such remedy we suppose it would be necessary for the court to compel a transfer to the purchaser in conformity with the requirement of the copyright act, in order to invest him with a complete title to the property. * * * An assignment, therefore, that would invest the assignee with the property of the copyright according to the act of Congress must be in writing and signed in the presence of two witnesses, and it may well be doubted whether a transfer, even by a sale under a decree of a court of chancery, would pass the title so as to protect the purchaser, unless by a conveyance in conformity with this requirement.”
The bill in the present case is evidently framed in conformity with this suggestion in the opinion of the Supreme Court, and, as we understand it, is warranted by the deliberate judgment of that tribunal.
It is insisted, however, upon the part of the patentee that so much of the opinion as asserts that the copyright may be subjected to a decree in equity is obiter dictum, and that it is overruled in the subsequent case of Stevens vs. Gladding, 17 Howard, 450. That case arose under the same state of facts and involved the same controversy which was determined in 14 Howard. It appears that under that opinion the case was remanded to the Circuit Court for the District of Bhode Island. When the mandate arrived, the judge vyho heard the case below had died, and when it was called, the counsel for the respondent desired to be heard, “ though,” as the judge states, “ he frankly avowed that the question passed on in the former case was ' the only one which could now be raised.”
We have examined that decision with care, and we can see nothing in it that can be considered as reversing the *92 ruling in 14 Howard, which asserts, as we understand, the right to maintain such a bill as the present. Judge Curtis, in his opinion, states that the positions assumed by the counsel of the judgment creditor are, that copyrights and patent rights are subject to seizure and sale on execution ; that whenever the owner of the copyright of a map causes a plate to be made which is capable of no beneficial use except to print his map, he thereby annexes to the plate the right to use it for printing the map, and also the right to publish and sell the copies and print it ; and that when the plate is sold on execution these rights pass with the plate as incidents or accessories thereto, though no mention is made of them in the sale.
It is in reference to this contention that Judge Curtis uses the language which has been relied upon in behalf of the patentee in this case. He declares that there would be great difficulty in assenting to the proposition that patent rights and copyrights held under the laws of the United States are subject to seizure and sale on execution. Not to repeat what is said on this subject in 14 Howard, 531, it may be added that these incorporeal rights do not exist in any pai'ticular State or district ; they are co-extensive with the United States. There is nothing in any act of Congress, or in the nature of the rights themselves to give them locality anywhere, so as to subject them to the process of courts having jurisdiction limited by the lines of States and districts. That an execution out of the court of common pleas for the county of Bristol, in the State of Massachusetts, can be levied on au incorporeal right subsisting in Rhode Island or New York, will hardly be contended. That by the levy of such an execution, the entire right could be divided, and so much of it as might be exercised within the county of Bristol sold, would be a position subject to much difficulty.”
It thus appears that the question alluded to by Judge Curtis was that which had been urged in argument by counsel, viz., the right to subject the copy and patent right to sale by execution at law, and that the difficulties suggested by the judge have reference only to such a sale. But the, *93 Supreme Court in the next sentence show that they do not design to decide even this point. Judge Curtis adds: These are important questions on which we do not find it necessary to express an opinion, because in this case neither the copyright, as such, nor any part of it, was attempted to be sold.” And the judge proceeds to show that the only thing attempted to be sold by the sheriff was the right to the copper plate on which the map had been engraved.
In a later part of the opinion the judge says: “ For these reasous, as well as those stated in 14 Howard, our conclusion is, that the mere ownership of the copper pílate of a map by the owner of the copyright does not attach to the plate the exclusive right of printing and publishing the map held under the act of Congress or any part thereof, but the incorporeal right subsists wholly separate from and independent of the plate and does not pass with it by a sale thereof on execution.”
The only questions beyond this which are discussed by the eourt are whether the penalties imposed by the act of Congress shall be decreed against the purchaser, and whether there should be au account of the profits. We see nothing in the decision which in any way can be held as a withdrawal by the Supreme Court of the distinct assertion in 14 Howard, that an interest under a copy or patent right can be subjected to the payment of the debts of the patentee by a proceeding in equity.
The argument ab inconvcnienti, urged by Judge Curtis as a reason why such rights should not be considered as liable to seizure under an execution at law, is invoiced in the present case. It is insisted that the provisions concerning patent rights in the Constitution and laws are designed to secure to ‘the inventor and author the rights to their inventions and writings, and that this provision would be nullified if those rights were subject to seizure in any way by creditors. But the. benefit designed by these provisions would be no more destroyed by the sale for the- payment of the inventor’s creditors, than by the voluntary sale by himself. If sold' to pay his debts, he ivould have already obtained the benefit of *94 the grant as much as if sold of his own motion. It is clear he. would have the right voluntarily-to sell his entire right in any, the remotest, portion of the country. Notwithstanding those rights are co-extensive with the Union, they would pass to his personal representative or legatee; and could be subjected to the payment of the debts of such heir or devisee in any part of the country.
It was long ago settled, as far back as the case in 3 Bosq. & Pul., 777, Hesse vs. Stevenson, decided in 1803, that, independent of any provision in the English bankrupt law, the right of the patentee in an invention would pass as assets to his assignee in bankruptcy. Lord Alvanley, in delivering the opinion in the case, says: But if the inventor avail himself of his knowledge and skill, and thereby acquire a beneficial interest which may he the subject of assignment, I cannot frame to myself an argument why that interest should not pass in the same manner as any other property-acquired by his personal industry. *■ * * * yye are> therefore, clearly of the opinion that the interest in the letters-patent was an interest óf such a nature as to be the subject of assignment by the commissioners in bankruptcy-.”'
And by the last bankrupt law, R. S. U. S., sec. 5046, patent rights and copyrights, with the other classes of property therein enumerated, are expressly declared to be vested in assignee of the bankrupt. By section 5062 the assignee is required to sell all the estate of the bankrupt upon, such terms as he thinks most for the interest of the creditors.
It cannot be denied that under this authority the assignee could make sale of the interest of a bankrupt patentee in the most valuable patents in the remotest corner of the country, in Alaska, or at the Dry Tortugas, unless his discretion in this respect was restrained by a court, upon the ground that a sale at such a place would be manifestly injurious to the estate. If the fact that the operation of the patent is co-extensive with the Union, is sufficient to indicate the absence of the power of sale under a decree, as suggested in 14 Howard, it is not easy to see why the same difficulty *95 should not prevent the exercise by the assignee in bankruptcy of his unquestioned right of.disposition.
If the contention of the patentee in this case is correct, it results that there will exist a class of property in this country, yielding great revenues from royalties, which would be exonerated by this special exemption from the responsibility which attaches to all other classes of property — payment of the honest debts of the debtor; and that one possessed of such patent rights, by skilfully refusing to invest his revenues in any other description of property, may successfully baffle creditors who may have supplied him with the very means by which he was enabled to achieve the success of his patent.
We have been referred to some decisions which it is alleged are at variance with the conclusions at which we have arrived, but a careful examination of them has satisfied us that such is not the case. The case in 1 Holmes’ Reports, page 152, which decides that the trustee in insolvency, under the Massachusetts statute, has no title to a patent right, proceeds upon the express words of the statute, which declares that only those descriptions of property which can be seized by execution at law pass to the assignee; and as it is settled that a patent right cannot be taken under an execution at law, the statute necessarily excluded it as assets from the trustee in insolvency. The case in 1 Gallison, 485, simply declares that a sheriff who had sold under execution a number of patented machines for a debt due by the patentee, could not be held liable under that provision of the patent law which declares that the sale of patented machines without the consent of the patentee should subject the vendor to suit for damages.
The case in 4 B. Monroe, 596, Cooper vs. Gunn, only decided that, where an author had conveyed the copyright of a book to a trustee for the benefit of his wife in fraud of his creditors, and the trustee had sold the copyright, a judgment recovered by the trustee against the purchaser of the copyright for part of the purchase money, could be subjected in equity to the payment of a judgment recovered by a *96 creditor against the author ; and the remark of that court, relied upon by the patentee’s counsel in this case as sustaining their position, was not applicable to the case, and, in our opinion, does not support the contention.
We have been appealed to with great earnestness to decide in favor of the inviolability of the right of the patentee, for the reason that patentees as a class, notwithstanding the benefits they confer upon the community, seldom participate in the profits which are derived from their inventions ; that they live laborious lives and die poor; and it is urged that it would be an additional hardship to deprive them of the exemption supposed to be secured to them by their grant from the United States.
Assuming the correctness of this supposition, and that it is really true that they seldom reap the benefit of their labors, it results that what is supposed to be the present state of the law exempting those interests from sale, does not operate very beneficially in their behalf. If, notwithstanding the assumed exemption, they receive such slender profits from their labor, a change in the law could not place them in a -worse position. It may be that they might profit by a condition of things which would expose their interests at public sale to competition, and thus bring the merits of their inventions more prominently before the public.
We are of opinion that the decree below should be reversed, and we will sign a decree directing the sale of the interest of the patentee for the payment of the judgment creditor, and directing him to execute the assignment required by the statute; and appointing a trustee with authority to execute the same, in the event of the refusal of the patentee to do so.